A99A1458, A99A1459. THE STATE v. BURKS; and vice versa.
(523 SE2d 648)

BLACKBURN, Presiding Judge.

Gabriel Burks was indicted on charges of obstruction of an officer, aggravated assault, loitering or prowling, public drunkenness, criminal trespass, and possession of cocaine. In Case No. A99A1458, the State appeals the trial court's order suppressing Burks' positive drug test results. In Case No. A99A1459, Burks cross-appeals the trial court's denial of a motion to suppress all evidence obtained as a result of an allegedly illegal arrest. The cases were combined for the purpose of this appeal. Because the trial court correctly denied Burks' motion to suppress by finding that his arrest was valid, but incorrectly granted his motion to suppress by finding that State action was involved in the testing of Burks' urine, we affirm in part and reverse in part the decision of the trial court.

The standard of review of a trial court's decision on a motion to suppress requires that "an appellate court must adopt the trial court's findings of fact unless they are clearly erroneous and not supported by any evidence admitted at the suppression hearing." *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998). However, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

*Case No. A99A1459*

The material facts applicable to Burks' cross-appeal are undisputed. Three police officers were dispatched to arrest a subject unrelated to this case on February 25, 1997, at approximately 4:15 a.m. The officers went to a building located at 201 South Second Street, Warner Robins. This building was on private property and was a reputed location for drug activity. Officer Brian Smith positioned himself at the back of this building to prevent anyone from escaping through the back door. While Officer Smith was in the back, Burks

entered the fenced-in backyard through an opening in the fence and proceeded toward the back door where Officer Smith was located. Burks had a hood over his head and his hands in his coat pockets. When Burks proceeded closer to the door, Officer Smith drew his gun and yelled, "Stop, police!" At this point, Smith was unaware whether Burks had any weapons in his possession. Upon hearing Officer Smith's instruction, Burks ran. After a pursuit, Smith caught Burks, struggled with him, and finally subdued him with the help of the two other officers on the scene.

1. Burks alleges that his arrest was illegal, and that any evidence subsequent to that arrest should have been suppressed. Burks contends that he was arrested at the moment Officer Smith drew his gun and told him to stop. Burks further contends that this act was illegal because Officer Smith had no reason to suspect any criminal activity on the part of Burks.

> "Under our law, there are three levels of police-citizen encounters. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. This tier provides no Fourth Amendment protection. . . . The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." (Citations omitted.) *State v. Banks*, 223 Ga. App. 838, 839-840 (479 SE2d 168) (1996). The third tier of police-citizen encounters include[s] "full-scale arrests that must be supported by probable cause." (Punctuation omitted.) *Alexander v. State*, 166 Ga. App. 233, 234 (2) (303 SE2d 773) (1983).

*State v. Kaylor*, 234 Ga. App. 495, 496-497 (507 SE2d 233) (1998). See also *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

Burks contends he was illegally arrested after he entered the property through an opening in the fence and Officer Smith drew his gun and ordered him to stop. Because Burks was not arrested when he was ordered to stop, we disagree. "An investigatory stop is not automatically an arrest simply because an officer is armed with a shotgun." *Franklin v. State*, 143 Ga. App. 3, 5 (237 SE2d 425) (1977). Additionally, "[i]t is often necessary for the police to approach a person with a drawn weapon in a suspiciously dangerous situation in

order to protect the physical well-being of both police officers and the public." *Id.* Officer Smith reasonably believed that any person coming onto this particular property under the outlined circumstances warranted investigation and could also pose a danger to him. It was certainly reasonable for him to inquire as to why anyone would enter the property at 4:15 a.m.

After the initial attempt to stop, " '[f]light in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search.' " *Howie v. State*, 218 Ga. App. 45, 46 (1) (459 SE2d 179) (1995). After Smith made the attempted investigative stop, Burks ran. "Flight at the approach of law officers is a strong indicium of mens rea." *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990). The trial court's denial of Burks' motion to suppress the evidence obtained after his initial detention was not clearly erroneous and is therefore affirmed.

### Case No. A99A1458

2. The State appeals the trial court's decision to suppress the results of a urinalysis performed by the hospital pursuant to its procedures which showed the presence of cocaine in Burks' system.

Burks contends he was injured when Officer Smith apprehended him, and he requested medical treatment for his injuries. Burks was taken to the hospital by Officer Wanda Bishop where doctors requested a blood or urine sample from Burks to determine whether he was under the influence of any drugs. When Burks declined, he was informed that he must comply or treatment would be denied. Burks continued to refuse, and the doctors eventually asked for the assistance of Officer Bishop. Bishop reiterated to Burks that he must submit a urine sample or he could not be treated. Nothing in the record supports the notion that Burks was forced to submit a urine sample. Additionally, there is no evidence in the record of any State action sufficient to trigger a Fourth Amendment analysis.

The record establishes that *Burks* requested to go to a hospital for treatment and that it was the *hospital's* requirement that Burks submit a blood or urine sample prior to any treatment. There is no evidence in the record that the State was involved in any way other than to reiterate the *hospital's* policy.

The cases relied upon by the trial court all involve situations in which some regulation of the State required that the defendant submit to a blood or urine test. See *Beasley v. State*, 204 Ga. App. 214, 215 (419 SE2d 92) (1992) (administration of drug test required before bond determination); *State v. Frazier*, 229 Ga. App. 344 (494 SE2d 36) (1997) (results of blood tests pursuant to implied consent were inadmissible as to evidence of possession of drugs). Additionally, in

*Gadson v. State*, 223 Ga. App. 342, 345 (4) (477 SE2d 598) (1996), we specifically determined that *Beasley*, supra, did "not require an officer to explain all charges which could result from a search for the search to be the product of 'free and voluntary' consent."

Because we find no State action was involved in Burks' urinalysis and the cases relied upon by Burks are inapposite, we reverse the trial court's grant of Burks' motion to suppress the evidence of possession of cocaine.

We do not address the appropriateness of the State's ability to obtain Burks' medical records and whether those actions violated his right to privacy, as that issue was not raised in the trial court.

*Judgment affirmed in Case No. A99A1459. Judgment reversed in Case No. A99A1458. Barnes and Ellington, JJ., concur.*

DECIDED OCTOBER 19, 1999.

*Kelly R. Burke, District Attorney, A. James Rockefeller, Assistant District Attorney*, for appellant.

*The Lucas Firm, Alex H. Morrow*, for appellee.