A04A0505. CROWLEY v. THE STATE.
(601 SE2d 154)

ADAMS, Judge.

Grady Crowley appeals after he was convicted in a bench trial, upon stipulated facts, of possession of cocaine, giving false information to a police officer and misdemeanor obstruction of an officer. As the sole issue on appeal, Crowley asserts that the trial court erred in overruling his motion to suppress evidence.

"Because the evidence at the suppression hearing was uncontroverted and no question regarding the credibility of witnesses was presented, we conduct a de novo review of the trial court's application of law to the undisputed facts." (Citation omitted.) *Hughes v. State*, 269 Ga. 258, 259 (497 SE2d 790) (1998). The evidence shows that in the early morning hours of June 25, 2002, Officer Tony Lefreniere of the Walton County Sheriff's Department was patrolling the downtown area of Social Circle. As he was driving through the streets, he noticed a vehicle parked in a driveway with its parking and brake lights flashing. In his experience, he knew that the flashing lights could indicate that a silent car alarm had been triggered, although he also acknowledged that he knew that such alarms could be triggered by a random motion, such as a passing car. The officer remained in the area for a couple of minutes to determine if someone was trying to break into the vehicle, but neither saw nor heard anything.

Officer Lefreniere then drove around the area to investigate. Approximately five to seven minutes after first observing the flashing lights, the officer spotted Crowley coming out of the woods on a bicycle approximately fifty to seventy-five yards behind where the car was parked. The officer got out of his patrol car to talk with Crowley. In response to the officer's questions, Crowley gave his name as "Roy Lee McGuire" and stated that he had just gotten home from work at the Legette and Platt plant. The officer knew that the plant was in Monroe, some ten miles away, and he suspected Crowley's story that he bicycled all the way from the plant. Before the officer could ask any more questions, however, Crowley said "man, I got to go," and took off on his bike. The officer pursued him, initially in his patrol car and then on foot.

At one point, Officer Lefreniere saw Crowley duck down into some bushes and appear to drop something. The officer drew his weapon and ordered Crowley to get on the ground and to raise his hands. Instead, Crowley got up and ran again. Officer Lefreniere caught up with him a short time later. Crowley had one knee on the ground, and the officer, thinking Crowley was about to charge, sprayed him with pepper spray. Crowley was then placed under arrest and put in the back of the patrol car. On the way to the police

station, Crowley was discarding items in the patrol car, including a couple of plastic bags with some kind of residue in them. The residue later tested positive for cocaine. Police subsequently searched the area where it looked as if Crowley had dropped something, but they did not find anything.

Crowley contends that the trial court erred in denying his motion to suppress because Officer Lefreniere had no particularized and objective reason to suspect that he had been engaged in criminal activity and thus had no reason to make an investigatory stop. "[A]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Such articulable suspicion that the law has been or is about to be violated is less than probable cause, but greater than mere caprice." (Citations and punctuation omitted.) *Baker v. State*, 256 Ga. App. 75, 77 (1) (567 SE2d 738) (2002). We must look to the totality of the circumstances to determine whether Officer Lefreniere had such a particularized and objective basis for suspecting Crowley of criminal activity. Id.

We note that Officer Lefreniere made two stops of Crowley on the evening in question: the first as he emerged from the woods on his bike and the second after he fled. We agree with Crowley that at the time of the first stop, the officer lacked a particularized and objective basis for suspecting him of criminal activity. Whether reasonable suspicion exists to make a stop "must be measured by current knowledge, i.e. at the moment the stop is made and not [in] hindsight." (Citation and punctuation omitted.) *Lewis v. State*, 233 Ga. App. 560, 561 (1) (504 SE2d 732) (1998). At the time of the first stop, the officer had observed a car with flashing lights but had no other evidence, and certainly no confirmation, that a break-in had occurred or had been attempted. The flashing lights certainly justified further investigation, but the officer could not have detained Crowley at that point on suspicion of a crime. Although Crowley was less than 100 yards from the car when he was stopped, mere presence in an area of suspected crime "is not enough to support a reasonable, particularized suspicion that the person is committing a crime." (Punctuation and footnote omitted.) *Smith v. State*, 245 Ga. App. 613, 616 (538 SE2d 517) (2000). And although the stop occurred late at night in a small town, there was no evidence that Crowley was in violation of any law or ordinance, that there had been any prior car break-ins in the vicinity or that it was a high crime area.

By the time of the second stop, however, Officer Lefreniere had additional reasons for suspecting Crowley of criminal activity. He had questioned Crowley and doubted his story that he had been biking home from a job some ten miles away. Then, after the officer asked Crowley only very general questions, he suddenly "took off," leading

the officer on an extended chase. At that point, it was not merely Crowley's presence in the area, but his unprovoked flight in response to fairly innocuous questions that aroused the officer's suspicions.

The U. S. Supreme Court has held that unprovoked flight, given other suspicious circumstances, may give rise to reasonable suspicion:

> Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

(Citations omitted.) *Illinois v. Wardlow*, 528 U. S. 119, 124-125 (120 SC 673, 145 LE2d 570) (2000).

In *Wardlow*, the officers involved were part of a four-car caravan that was converging on an area known for heavy narcotics trafficking when they observed Wardlow, carrying an opaque bag, flee down an alley upon seeing the caravan. The Supreme Court held that Wardlow's presence in a high crime area, when coupled with his unprovoked flight, gave rise to reasonable suspicion of criminal activity. The court noted that:

> [s]uch a holding is entirely consistent with our decision in *Florida v. Royer*, 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983), where we held that when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. Id. at 498. And any refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure. But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

(Citation and punctuation omitted.) Id.

Thus, when the totality of the circumstances known at the time of the second stop is considered, we conclude that Officer Lefreniere was justified in suspecting that Crowley was involved in criminal activity and, therefore, in detaining him for further investigation. See *Cox v. State*, 263 Ga. App. 266, 267 (1) (587 SE2d 205) (2003). And because the evidence at issue was seized following the second stop, we find that the trial court properly denied Crowley's motion to suppress.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JUNE 9, 2004.

*Anthony S. Carter, John T. Strauss*, for appellant.
*W. Kendall Wynne, District Attorney, Kelly D. Kautz, Assistant District Attorney*, for appellee.