## A05A0876. THE STATE v. DEVINE.
### (622 SE2d 854)

RUFFIN, Chief Judge.

The State charged Curtis Devine with possessing cocaine with intent to distribute, obstructing a law enforcement officer, and giving a false birth date. Prior to trial, Devine moved to suppress evidence seized by police. The trial court granted Devine's motion, and the State appeals. For reasons that follow, we reverse.

On appeal from the trial court's ruling on a motion to suppress, we review the application of law to undisputed facts de novo.[1] As noted by the trial court, the facts in this case are not disputed. On March 5, 2004, Officer T. R. Golden saw a man later identified as Devine walking in a Walgreens parking lot. Devine did not appear to have an intended destination, and "it seemed like he was just looking for something." As Golden watched, Devine approached Walgreens, then turned away and walked into an adjacent Publix parking lot. Suspicious that Devine might be looking for a car to burglarize, Golden decided to find out "what he was up to."

Golden exited his vehicle and approached Devine, asking "[w]hat's up?" Devine did not respond. Golden asked Devine his name, and Devine told him. Next, Golden requested identification, and Devine provided his driver's license. Golden took the license and immediately asked whether Devine would consent to a pat-down search for safety purposes. As Golden explained:

> The reason why I asked permission to pat [Devine] down for my safety and his own was because of the fact that I was involved in a conversation with him. The practice that I do for my safety so I can go home at night, if I have any contact with anybody for any extended period of time more than just, hey, how are you doing, I'm going to pat you down because I want to make sure that you don't have any weapons on you.

According to Golden, Devine looked at him, stated "I didn't do anything," then ran. Golden gave chase. During the chase, Devine dropped his jacket on the ground. Golden caught up with Devine and, after a struggle, managed to subdue him with the help of other officers. Another officer retrieved Devine's jacket. Golden searched it and discovered over 100 bags of suspected cocaine. A search of Devine's person also produced $172 in cash.

Based on Golden's testimony, the trial court granted Devine's motion to suppress the evidence found in his jacket and on his person.

---

[1] *Salmeron v. State*, 273 Ga. App. 55 (614 SE2d 177) (2005).

It determined that, although Golden was authorized to ascertain Devine's identity, the officer lacked authority to "initiate a *Terry* stop, to pat down [Devine], or to ask [Devine] to allow a pat-down search of his person." According to the trial court, Golden's request for permission to pat Devine down constituted an improper seizure under the Fourth Amendment, rendering the subsequent search of his person and jacket illegal.

Georgia recognizes three tiers of police-citizen encounters: consensual encounters; brief investigatory stops that require reasonable suspicion; and arrests that require probable cause.[2] A first-tier, consensual encounter provides no Fourth Amendment protection.[3] During such encounter, an officer may approach a citizen, ask the citizen questions, and request identification " 'without any basis or belief that the citizen is involved in criminal activity, as long as the officer[ ] do[es] not detain the citizen or create the impression that the citizen may not leave.' "[4]

The trial court found that Golden lacked authority to request consent to search Devine. We disagree. During a first-level encounter, an officer may seek permission to search without elevating the encounter to a second-tier stop.[5] "[M]erely requesting consent for a search is not a seizure and does not require articulable suspicion."[6] In this case, Golden approached Devine and asked for proof of identification, which Devine provided — first-tier conduct that does not raise Fourth Amendment concerns.[7] Golden then immediately requested permission to pat Devine down. Nothing supports the trial court's conclusion that such request transformed this voluntary encounter into a second-level stop requiring reasonable, articulable suspicion.[8] It follows that Golden was authorized to ask Devine for permission to conduct a pat-down search.

Our inquiry, however, does not end there. The record shows that Golden did not discover the contraband during a consensual pat-down search. On the contrary, Devine responded to the requested search by proclaiming his innocence, fleeing, and dropping his jacket on the ground. We must consider, therefore, whether the subsequent search of Devine's person and jacket meets Fourth Amendment scrutiny.

---

[2] See *State v. Burks*, 240 Ga. App. 425, 426 (1) (523 SE2d 648) (1999).

[3] See id.; *Mijares v. State*, 252 Ga. App. 804, 805 (2) (556 SE2d 927) (2001).

[4] *Burks*, supra at 426 (1).

[5] See *Mijares*, supra at 805 (2).

[6] (Punctuation omitted.) Id.

[7] See id.

[8] See id.; *State v. Cates*, 258 Ga. App. 673, 675 (574 SE2d 868) (2002) (physical precedent only).

Although Devine was entitled to simply refuse Golden's request to pat him down,[9] he did not do so. Instead, Devine fled. And as we have noted, "[f]light is a circumstance sufficient to give an articulable suspicion of illegal activity," justifying a brief investigatory stop.[10] Moreover, Devine left his identification with Golden and discarded his jacket as he ran, further raising Golden's suspicions that Devine was involved in criminal activity. Under these circumstances, Golden was authorized to chase and briefly detain Devine.[11]

The record further shows that, once Golden caught Devine and told him to "get down," Devine struggled with the officer for several minutes before Golden, aided by other officers, subdued and hand-cuffed him. Such conduct gave Golden probable cause to arrest Devine for misdemeanor obstruction of an officer.[12] Incident to that arrest, Golden was authorized to search Devine's person, as well as the jacket, which had been in Devine's recent possession at the time of his arrest.[13] Accordingly, the trial court erred in granting the motion to suppress.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

### DECIDED NOVEMBER 1, 2005.

*Gwendolyn Keyes Fleming*, District Attorney, *Andrew C. Hall*, Assistant District Attorney, for appellant.
*Beverly J. Taylor*, for appellee.

---

[9] See *State v. Kwiatkowski*, 238 Ga. App. 390, 393 (519 SE2d 43) (1999) (individual may refuse officer's request for consent to search without creating reasonable suspicion sufficient to justify a brief detention).

[10] *Tuggle v. State*, 236 Ga. App. 847, 849 (1) (c) (512 SE2d 650) (1999). See also *Ransom v. State*, 239 Ga. App. 501, 504 (2) (521 SE2d 430) (1999).

[11] See id.; *Tuggle*, supra.

[12] See *Tuggle*, supra at 849 (1) (d), (2); OCGA § 16-10-24 (a).

[13] See *Hill v. State*, 263 Ga. App. 365, 366 (587 SE2d 843) (2003) (search of bag that had been in defendant's recent possession at time of arrest was lawful as a search incident to arrest); *Sprinkles v. State*, 227 Ga. App. 112, 113 (1) (488 SE2d 492) (1997).