**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 11, 2012**

# In the Court of Appeals of Georgia

A12A1131. BARBER v. THE STATE.

RAY, Judge.

After a jury trial, Mario Barber was found guilty of possession of cocaine with the intent to distribute.[1] He appeals the denial of his motion for a new trial, arguing that the trial court erred in denying his motion to suppress, that he received ineffective assistance of counsel, and that the evidence was insufficient to support his conviction. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines

---

[1] OCGA § 16-13-30 (b).

evidence sufficiency and does not weigh the evidence or determine witness credibility.[2]

So viewed, the evidence shows that an officer with the Newnan Police Department, was patrolling the streets on the afternoon of November 30, 2009, when he noticed Barber walking in the roadway. The officer stopped his patrol car and stepped out of the vehicle, intending to instruct Barber to get out of the roadway and walk on the sidewalk. At that point, Barber said "I ain't done nothing," and took off running through a small wooded area. As the officer chased behind, he noticed Barber reach into his pocket and then drop a "baseball-size . . . clear looking bag." The officer continued to follow Barber, but lost sight of him when Barber went around the corner of some apartments. A tenant told the officer that Barber had entered her apartment, and she gave the officer permission to search the home. As the officer entered the home, he observed Barber exiting through the side door. After another chase, the officer instructed Barber to stop running and get on the ground. Barber did not comply with the command, and so the officer subdued him with a taser. Barber then was handcuffed and taken into custody. The officer retrieved the bag dropped

---

[2] (Footnote omitted.) *Carson v. State*, 314 Ga. App. 515 (724 SE2d 821) (2012).

by Barber, which contained 19 individual bags of powder cocaine. Barber was searched, and $1,350 in various bills was found on his person.

1. Barber argues that the trial court erred in denying his motion to suppress both the evidence of the contraband and the money found on his person as the fruits of an unlawful search and seizure. We disagree.

(a) We first address whether the trial court erred in denying Barber's motion to suppress the bag of cocaine that he tossed onto the wooded path while running away from the officer. Barber was in a state of flight when he discarded the cocaine he now seeks to suppress, and contrary to Barber's assertions, "being chased is *not* tantamount to being 'seized' in violation of the Fourth Amendment."[3] Rather, contraband discarded before a suspect is seized or during flight is admissible as evidence, even if an issue exists as to whether the officers possessed reasonable suspicion of criminal activity.[4] Accordingly, Barber's abandonment of the contraband

---

[3] (Citations omitted; emphasis in original.) *Smith v. State*, 217 Ga. App. 680 (2) (458 SE2d 704) (1995).

[4] *Watson v. State*, 247 Ga. App. 498 (544 SE2d 469) (2001).

before he was seized required a finding that the cocaine was not the fruit of an illegal arrest.[5]

(b) We next address whether the trial court erred in denying Barber's motion to suppress the $1,350 found on his person at the time of arrest. When reviewing the denial of a motion to suppress, "we construe the evidence most favorably to uphold the findings and judgment, and we review de novo the trial court's application of the law to the undisputed facts. Additionally, we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous."[6]

Georgia recognizes three tiers of police-citizen encounters: consensual encounters; brief investigatory stops that require reasonable suspicion; and arrests that require probable cause.[7] A first-tier, consensual encounter provides no Fourth Amendment protection, and during such an encounter, an officer may approach a citizen, ask the citizen questions, and request identification "without any basis or belief that the citizen is involved in criminal activity, as long as the officer[] do[es]

---

[5] Id. at 499.

[6] (Footnote omitted.) *Thompson v. State*, 289 Ga. App. 661 (658 SE2d 122) (2007).

[7] See *State v. Burks*, 240 Ga. App. 425, 426 (1) (523 SE2d 648) (1999).

4

not detain the citizen or create the impression that the citizen may not leave."[8] In a second-tier encounter, even in the absence of probable cause, a police officer may "stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity."[9] In order to do so, "the officer must have more than a subjective, unparticularized suspicion or hunch."[10] Rather, "the officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[11]

Here, Barber argues that his encounter with the officer was a second-tier encounter, but that the officer had no particularized or objective reason to suspect that he was engaged in criminal activity and thus no reason to make an investigatory stop. However, even assuming that the stop was a second-tier encounter, the officer in the present case had a reasonable suspicion that Barber was violating the law by walking

---

[8] (Citation and punctuation omitted.) Id.

[9] (Citation and punctuation omitted.) Id.

[10] (Punctuation and footnote omitted.) *Ewumi v. State*, __ Ga. App. __, (1) 727 SE2d 257, 261 (1) (2012).

[11] (Punctuation and footnote omitted.) Id.

5

down the center of the roadway.[12] After the officer pulled his patrol car over to instruct Barber to move to the sidewalk, Barber yelled "I ain't done nothing wrong" and fled into the wooded area. At this point it was not merely Barber's act of walking in the center of the road, but his unusual response combined with unprovoked flight that aroused the officer's suspicions. Unprovoked flight, coupled with other suspicious circumstances, may give rise to reasonable suspicion sufficient to justify a second-tier stop.[13] "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight - wherever it occurs - is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."[14] Also, Barber discarded the bag during the chase, which provides additional suspicion of criminal activity.

---

[12] OCGA § 40-6-96 (b) and (c) require that when a sidewalk or shoulder is available, a pedestrian must walk upon the sidewalk or shoulder of the road, rather than upon the roadway itself. There are exceptions, but they are not applicable here.

[13] *Crowley v. State*, 267 Ga. App. 718, 720 (601 SE2d 154) (2004).

[14] (Citations and punctuation omitted.) Id.; *Illinois v. Wardlow*, 528 U. S. 119, 124 (120 SC 673, 145 LE2d 570) (2000). Accord *State v. Devine*, 276 Ga. App. 159, 161 (622 SE2d 854) (2005).

6

Thus, given the totality of the circumstances, we conclude that the officer was authorized to briefly detain Barber once he had caught up with him.[15]

2. Barber contends that the trial court erred by denying his motion for new trial because he received ineffective assistance of counsel. He contends that his trial counsel was ineffective because (a) counsel failed to object to the prosecutor's comments characterizing Barber as a drug dealer during opening statement, (b) counsel failed to object to the prosecutor's questioning of an officer's knowledge of the law, and (c) counsel failed to object to the prosecutor's cross-examination of Barber.

To prevail on this claim, Barber "must show that counsel's performance was deficient and that the deficient performance prejudiced the defense."[16] In doing so, he has to show a reasonable probability existed that the result of his trial would have been different, but for his defense counsel's deficient performance,[17] and he also must

---

[15] See *Crowley*, supra at 721; *Devine*, supra.

[16] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[17] *Baggett v. State*, 257 Ga. 735 (1) (363 SE2d 257) (1988).

overcome the strong presumption that the representation was effective.[18] The question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[19]

(a) Barber first asserts that his trial counsel rendered ineffective assistance when he failed to object to a portion of the prosecutor's opening argument. Specifically, Barber objects to the prosecutor's first statement: "[t]his is a simple case, and it's a simple case about a drug dealer, a drug dealer who makes money off of other peoples' addiction." According to Barber, this statement was made with the improper purpose of inflaming the minds of the jurors against defendant.

An opening argument is intended "to give the jury and the court an outline of the evidence that the party anticipates presenting. It is not time for an attorney to argue the case."[20] Even if we were to assume that Barber's trial counsel deficiently

---

[18] *Clarington v. State*, 178 Ga. App. 663, 667 (5) (344 SE2d 485) (1986).

[19] *Suggs*, supra at 88 (4).

[20] (Punctuation and footnotes omitted.) *Billings v. State*, 251 Ga. App. 432, 433 (1) (558 SE2d 10) (2001) (statement to jurors that they were participating in the war did not serve a legitimate purpose and may serve to "inflame the minds of the jury against the defendant).

8

performed by failing to object to this statement, there was ample evidence supporting Barber's conviction[21] and the trial court instructed the jury not to consider the opening statement as evidence. Accordingly, Barber cannot meet his burden of proving that prejudice resulted from such performance.[22]

(b) Barber contends that his trial counsel performed deficiently by failing to object to the State asking Officer Marcos Gonzales to "tell the jury what's the difference between simple possession and possession with intent to distribute?" At the hearing on Barber's motion for new trial, trial counsel testified that he did not object because "our theory was [that Barber] didn't possess the drugs. Whether there was possession with intent to distribute or straight possession, we wanted to focus on that he never possessed anything." "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of

---

[21] See Division 3, infra.

[22] *Phillips v. State*, 285 Ga. 213, 219 (5) (a) (675 SE2d 1) (2009).

9

counsel."[23] In light of trial counsel's reasonable strategy in failing to object, Barber cannot demonstrate deficient performance on that basis.[24]

(c) Barber contends that his trial counsel was ineffective because he failed to object to the state asking him on cross-examination, "[y]ou've held cocaine before, haven't you?" Barber argues that this comment was inappropriate because it was said prior to the State impeaching Barber with prior convictions. At the hearing on Barber's motion for a new trial, trial counsel stated that he did not object to this question because his strategy with regard to Barber's prior drug convictions was to acknowledge that while Barber had been involved with drugs in the past, he was an honest man and had pled guilty to those offenses, and that Barber had not pled guilty in the present case because the cocaine found on the wooded path did not belong to him. As stated above, trial counsel's reasonable trial strategy does not constitute ineffective assistance of counsel, and although another trial defense counsel may have

---

[23] (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

[24] *Rawls v. State*, __ Ga. App. __ (4) (a) (Case No. A12A0093, decided on May 17, 2012).

followed a different strategy, this does not mean that Barber's trial counsel's strategy constituted the denial of effective assistance of counsel.[25]

3. In his final enumeration of error, Barber contends that the evidence summarized above was insufficient to sustain his conviction for possession of cocaine with the intent to distribute.

OCGA § 16-13-30 (b) provides in pertinent part that it is unlawful to possess a controlled substance with the intent to distribute it.[26] The evidence that small baggies of cocaine were found in a large plastic bag on the ground, where Barber had been observed dropping what appeared to the officer to be a "baseball-size . . . clear looking bag," permitted a rational trier of fact to infer that Barber had been in possession of the cocaine.[27]

Although the state is required to show more than mere possession to prove that Barber intended to distribute the cocaine, "[n]o bright line rule exists regarding the

---

[25] *Heard v. State*, 177 Ga. App. 802, 804 (5) (341 SE2d 459) (1986).

[26] See OCGA § 16-13-26 (1) (D) (identifying cocaine as a Schedule II controlled substance).

[27] See *Smith v. State*, 285 Ga. App. 399, 400 (1) (646 SE2d 499) (2007) (officer's observation of defendant throwing crack pipe to ground, combined with testimony that pipe tested positive for presence of cocaine, provided ample direct evidence that defendant was in possession of cocaine).

11

amount or type of evidence sufficient to support a conviction for possession with intent to distribute."[28] Rather, the State "may show intent to distribute in many ways, including expert testimony that the amount of contraband possessed was inconsistent with personal use, evidence showing the manner of packaging, and the possession of certain amounts or denominations of currency."[29] "[T]he issue of intent is peculiarly a question of fact for jury determination."[30] Further, "even if not formally admitted as an expert, a police officer may give his opinion as to whether the amount or value of the contraband is consistent with distribution, if the [S]tate lays a foundation for the opinion by eliciting testimony about the officer's experience and training in drug enforcement."[31]

Here, ample evidence showed Barber's intent to distribute the cocaine. Officer Gonzales, who has been trained and experienced in the illegal drug distribution

---

[28] (Citation and punctuation omitted.) *Cotton v. State*, 300 Ga. App. 874, 876 (686 SE2d 805) (2009).

[29] (Footnote omitted.) *Helton v. State*, 271 Ga. App. 272, 275 (b) (609 SE2d 200) (2005).

[30] (Footnote omitted.) *Hughes v. State*, 297 Ga. App. 217, 218 (676 SE2d 852) (2009).

[31] (Citations omitted.) *Haywood v. State*, 301 Ga. App. 717, 719 (1) (689 SE2d 82) (2009).

industry, testified that the fact that the 10 grams of cocaine found in the large plastic bag was individually packaged into 19 small bags as if for resale, combined with the fact that a large sum of cash was found on Barber, showed an intent to distribute and not simple possession. The above evidence is sufficient to sustain Barber's conviction.[32]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[32] See *Maddox v. State*, 227 Ga. App. 602, 603 (1) (490 SE2d 174) (1997); Compare *Hicks v. State*, 293 Ga. App. 830, 831-833 (668 SE2d 474) (2008) (court found evidence supported the hypothesis that the defendant was a user rather than a dealer when the only evidence of intent to distribute was that defendant possessed a pill bottle containing an unidentified number of cocaine pieces and an investigator testified that storing drugs in such disposable containers indicated an intent to sell).