**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 20, 2014**

# In the Court of Appeals of Georgia

A14A1446. MERRITT v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for possession of cocaine with intent to distribute, Richard Merritt argues that the trial court erred when it denied his motion to suppress, admitted evidence of two prior drug convictions, considered two prior convictions for sentencing purposes, and denied his motion for new trial in light of newly discovered evidence that Merritt was tased during his arrest. Merritt also alleges that trial counsel was ineffective in a number of ways. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation

omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that on January 26, 2009, police arrested Kimberly Taylor at a hotel in Douglas County for possession of drug paraphernalia, including crack pipes. Taylor then agreed to provide police with the names of her drug suppliers. With police recording the conversation, Taylor called a man named Fred and ordered $300 of crack cocaine to be delivered to the hotel. As police continued to record, Taylor called Fred twice more to determine when he would arrive with the cocaine. Fred told Taylor that "Richard" would be arriving shortly after making a payment at an Enterprise car rental office nearby. Taylor knew Richard Merritt, with whom she had smoked crack at the hotel a number of times in the past few weeks, and who had introduced her to Fred.

Shortly after the last of Taylor's three calls to Fred, Merritt arrived at the hotel in a white Nissan Sentra. After Taylor positively identified Merritt and his vehicle, Merritt entered the hotel carrying a cup of beer in his left hand and with his right hand

2

in his jacket pocket. As he did so, police apprehended him and forced him to the ground. In a report written on the day of Merritt's arrest, Detective Juan Gonzales stated that a second officer, Tully Yount, had pulled out his taser and had "applied" it to the suspect, at which point Merritt stopped struggling and allowed the officers to arrest him. At trial, Detective Gonzales testified that although Officer Yount had threatened to use the taser on Merritt, he had not actually discharged the device. Officer Yount did not appear at trial.

After Merritt was subdued, police observed a bag later shown to contain 1.59 grams of crack cocaine on the floor next to Merritt's right jacket pocket. Also on the floor next to Merritt were candies, a lottery ticket, and Enterprise rental car keys, all of which Merritt admitted at trial were his. Merritt was charged with one count each of possession of cocaine with intent to distribute and obstruction of a police officer. At trial, held in March 2010, Merritt also admitted that he had a long history of using crack cocaine, that he had often smoked crack with Taylor, that he had previously purchased drugs from Fred, that he had assisted Taylor in obtaining drugs in the past, and that he had gone to the Enterprise car rental office before arriving at the hotel. Merritt denied that the cocaine found on the floor was his, however. A jury found

Merritt guilty of possession of cocaine with intent to distribute but not guilty of obstruction. Merritt was convicted and sentenced as a recidivist to serve 30 years.

At the hearing on Merritt's motion for new trial, Merritt's assertions included that a "Use of Force" report written in March 2013, three years after trial, showed that Yount had indeed discharged his taser while holding it against Merritt's back. Yount also testified at the same hearing that he had discharged his taser in the course of subduing Merritt. The trial court denied Merritt's motion. This appeal followed.

1. Merritt first argues that the trial court erred when it denied his motion to suppress the bag of crack cocaine found next to him on the ground at the time of his arrest because Taylor had not been shown to be a reliable source of information before she identified Merritt. We disagree.

> A trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. We construe all evidence presented in favor of the trial court's findings and judgment.

*Lopez v. State*, 292 Ga. App. 518, 519 (664 SE2d 866) (2008) (citation and punctuation and footnote omitted); see also *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

4

It is true that "when probable cause is based, at least in part, upon information supplied by an informant, the State must demonstrate that the information is reliable." *Lopez*, 292 Ga. App. at 520 (citation and punctuation omitted). But it is no less true that probable cause may be provided by "the totality of the circumstaces surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability," with any "deficiency in one" of these categories "compensated for . . . by a strong showing as to the other, or by some other indicia of reliability." Id. Thus we concluded in *Lopez* that when police had set up the controlled buy, when the informant had been charged, was in custody, and was giving inculpatory information against his own penal interest, and when the informant's tips as to the drug dealer's time and mode of arrival had already proved accurate, a trial court did not err when it denied the motion to suppress. Id. at 522. Here, Taylor's information as to Merritt's appearance, his car, the timing of his arrival, and his purpose in coming there proved accurate in every material respect, and was against her penal interest in that she was in custody on a charge of possessing drug paraphernalia and had admitted to using drugs with Merritt recently. Thus we cannot say that the trial court erred when it concluded on the basis of all these circumstances that the State had made a sufficiently strong showing of Taylor's reliability to justify the admission of the

5

evidence against Merritt as found in a search supported by probable cause. Id. at 522 (affirming trial court's denial of motion to suppress evidence found on the basis of an informant's disclosures).

2. Merritt also argues that the trial court erred when it admitted two 1988 felony convictions, one for possession of cocaine with intent to distribute and one for simple possession, for purposes of impeachment. We disagree.

Former OCGA § 24-9-84.1 (a) (2), which was in effect at the time of Merritt's March 2010 trial, provided:

> Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant.

See also *Quiroz v. State*, 291 Ga. App. 423, 427-428 (4) (662 SE2d 235) (2008) (requiring trial courts to make express findings that a prior conviction's probative value outweighs its prejudicial effect). "Factors to be considered [as to probative value] include the kind of felony involved, the date of the conviction, and the importance of the witness's credibility." Id. at 428 (4).

Here, the State timely served Merritt with notice of its intent to use the 1988 convictions for cocaine possession in the event that Merritt chose to testify at trial. Before these prior convictions were offered at trial, the court held that their probative value substantially outweighed their prejudicial effect. When Merritt chose, against his own counsel's advice, to testify in his own defense, counsel made a strategic decision to elicit testimony as to these prior convictions from Merritt in order to "lessen the blow" of this evidence on the jury, which might look more favorably on a defendant willing to admit past mistakes.

As this Court has repeatedly noted, a defendant who testifies "on direct examination about his prior convictions . . . may not on appeal challenge the trial court's ruling and claim that the admission of such evidence was error." *Moseley v. State*, 324 Ga. App. 449, 451 (751 SE2d 108) (2013), citing *Ohler v. United States*, 529 U. S. 753, 760 (120 SCt 1851, 146 LE2d 826) (2000) ("[A] defendant who preemptively introduces evidence of a prior convictions on direct examination may not on appeal claim that the admission of such evidence was error"); see also *Contreras v. State*, 314 Ga. App. 825, 828 (3) n. 4 (726 SE2d 107) (2012). It follows that this assertion presents nothing for this Court to review. See *Moseley*, 324 Ga. App. at 451.

3. Merritt also argues that the trial court erred when it considered his 1988 conviction for possession of cocaine with intent to distribute, as well as a 1986 conviction for possession of marijuana with intent to distribute, because these convictions were based on invalid pleas, with the result that he was not properly sentenced as a recidivist under OCGA § 17-10-7 (c). We disagree.

As a preliminary matter, we note that Merritt challenges only two of the four prior felony convictions introduced by the State for sentencing purposes. OCGA §§ 16-13-30, which outlaws the possession "with intent to distribute [of] any controlled substance," and 17-10-7 (c), the recidivist statute,[1] require that a defendant convicted of only a *second* offense of drug possession with intent to distribute must serve at least ten years in prison without parole:

> OCGA § 16-13-30 (d) provides that upon a second or subsequent conviction of possession of a controlled substance with the intent to distribute, the trial court has the discretion to impose a sentence of "not less than ten years nor more than 40 years or life imprisonment. The

---

[1] OCGA § 17-10-7 (c) provides in relevant part: "[A]ny person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served."

8

provisions of subsection (a) of Code Section 17-10-7 shall not apply to a sentence imposed for a second such offense; provided, however, that the remaining provisions of Code Section 17-10-7 shall apply for any subsequent offense."

*Mann v. State*, 273 Ga. 366, 368 (541 SE2d 645) (2001), quoting OCGA § 16-13-30 (d); see also *Johnson v. State*, 259 Ga. App. 452, 457 (4) (576 SE2d 911) (2003); *State v. Jones*, 265 Ga. App. 493, 494 (2) (594 SE2d 706) (2004) (OCGA § 17-10-7 (c) applies to a second offense under OCGA § 16-13-30 (b), and the time imposed must be served without parole).

Merritt introduced a transcript of the plea colloquy from the second 1988 conviction to support his argument that this conviction was for simple possession of cocaine rather than possession of that drug with intent to distribute. The record shows, however, that this conviction was entered on the count "as charged," that is, possession of cocaine "with intent to distribute" the drug. As Merritt himself conceded at trial, moreover, this 1988 conviction was for possession of cocaine with intent to distribute. Merritt's assertion that he was not advised of his right against self-incrimination before pleading guilty in 1986 to possession of marijuana with intent to distribute also lacks merit in light of the plea transcript he himself introduced, which shows that he was advised of his "right to remain silent" at that

9

time. See *Campos v. State*, 292 Ga. 83, 85 (734 SE2d 359) (2012) (the terms "right to remain silent" and "right against self-incrimination" are synonymous for the purpose of showing the voluntariness of a plea "if it is plain, as here, that the plea court is referring to the right to remain silent at trial") (citation and punctuation omitted).

Because the felony convictions not challenged by Merritt would have sufficed to render him a recidivist under these circumstances, and because both of Merritt's attacks on his prior convictions for drug possession with intent to distribute lack merit, the trial court did not err when it considered these prior convictions and sentenced Merritt to serve 30 years without parole under OCGA §§ 16-13-30 (b) and 17-10-7 (c). *Johnson*, 259 Ga. App. at 456 (3) (b) (because defendant's conviction "was his second . . . for violating OCGA § 16-13-30 (b), the trial court was not prohibited from sentencing him under both OCGA §§ 16-13-30 (d) and 17-10-7 (c)") (punctuation and footnote omitted).

4. Merritt also argues that the trial court erred in failing to grant him a new trial in light of the March 2013 "Use of Force" report, which contradicted Gonzales's testimony at trial that Yount did not use his taser on Merritt at the time of his arrest and thus deprived him of a fair trial. We disagree.

> Due process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it a court must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Davis v. State*, 292 Ga. 90, 92 (2) (734 SE2d 401) (2012) (punctuation omitted), quoting *United States v. Valenzuela-Bernal*, 458 U. S. 858, 872 (III) (B), (102 SCt 3440, 73 LE2d 1193) (1982).

The record shows that the March 2013 report was completed by Officer Yount and signed by a supervising officer who had not been present at Merritt's 2009 arrest. Yount did not appear at trial, and there is no evidence that Detective Gonzales knew when he testified that Officer Yount had in fact discharged his taser on Merritt. Further, Merritt himself testified that he was tasered on his back "for a couple of minutes," and the jury acquitted Merritt of obstruction. Given that Merritt "was not prevented in any way from challenging the State's evidence that he now contends was incorrect," and that he was acquitted of the charge involving the role of force and resistance in his arrest, we cannot conclude that the later emergence of evidence that Yount actually tasered Merritt rendered Merritt's trial "fundamentally unfair." *Davis*,

11

292 Ga. at 92 (2) (rejecting defendant's due process attack on conviction when he "simply chose not to challenge the evidence [later disproved] in any way").

5. Merritt argues that trial counsel was ineffective when he (a) failed to discredit Gonzales's testimony as to the circumstances of Merritt's arrest; (b) opened the door to the admission of Merritt's prior convictions for voluntary manslaughter and possession of a firearm by a convicted felon; (c) failed to prepare sufficiently so as to avoid Merritt's and Taylor's admissions of drug use; (d) failed to emphasize a discrepancy in an officer's determination of the cocaine's street value; and (e) failed to object to the use of Merritt's prior drug convictions to sentence him as a recidivist. These assertions lack merit.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). As to deficient performance, "every effort must be made to eliminate the distorting effects of hindsight," and the trial court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *White v. State*, 265 Ga. 22, 23 (2) (453 SE2d 6) (1995) (citation and punctuation omitted.) As

12

to prejudice, a defendant must show "a reasonable probability of a different outcome" due to trial counsel's deficient performance. *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008) (punctuation and footnote omitted). The question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (footnote omitted).

(a) Merritt asserts that counsel failed to highlight discrepancies between (i) Gonzales' testimony that no taser was used and later evidence showing that it was; (ii) Gonzales' testimony that he saw the cocaine on the ground after Merritt had been handcuffed and another officer's testimony that he noticed the cocaine "when we got [Merritt] up and started checking him"; and (iii) Gonzales's testimony that Merritt began to run toward the front desk when police entered the hotel lobby and other testimony that Merritt was apprehended immediately upon entering the lobby.

(i) Although Merritt claims that counsel could have impeached Gonzales with the March 2013 Use of Force report, the Supreme Court of Georgia has noted that an attorney cannot properly "impeach" a witness with a document prepared by another witness, see *Woods v. State*, 269 Ga. 60, 63 (3) (495 SE2d 282) (1998), let alone one

13

prepared years after the testimony at issue. Further, Merritt's acquittal on the obstruction charge arising from his conduct in the few moments before the taser was applied "strongly supports the conclusion that the assistance rendered by the attorney fell within that broad range of reasonably effective assistance." *Moon v. State*, 288 Ga. 508, 516 (9) (705 SE2d 649) (2011) (citations and punctuation omitted). Counsel did not perform deficiently when he left this discrepancy for the jury to resolve.

(ii) At the hearing on Merritt's motion for new trial, counsel testified that the two officers' statements concerning the location of the cocaine were not contradictory "to the point where [counsel] wanted . . . to keep on talking about the cocaine." Further, the fact that the officers described the cocaine as located at slightly different locations on the floor did not render their testimony contradictory. For both of these reasons, the trial court did not clearly err when it determined that counsel's strategic decision not to draw more attention to the topic of the cocaine's location was a reasonable one. *Barber v. State*, 317 Ga. App. 600, 604 (2) (c) (732 SE2d 125) (2012) (counsel was not ineffective in choosing not to object to question as to whether defendant had previously possessed cocaine because counsel's strategy was for the defendant to acknowledge past drug involvement but dispute ownership of the cocaine at issue).

14

(iii) Merritt argues that counsel should have highlighted a discrepancy between Gonzales' testimony at the hearing on Merritt's motion to suppress that Merritt ran a few steps from police on their arrival and later testimony that he was apprehended immediately. Whether the trial court would have found this discrepancy sufficiently significant to justify further exploration was a strategic decision for trial counsel, and not this Court, to make. See *Leopold v. State*, 324 Ga. App. 550, 557 (1) (d) (751 SE2d 184) (2013) (counsel's strategic decision not to inquire into circumstances under which a co-participant fled the state to avoid prosecution was not unreasonable). As the trial court noted in its order denying the motion for new trial, moreover, it denied Merritt's motion to suppress because the information provided by Taylor had proved accurate, and not because Merritt ran from officers attempting to arrest him. Given Merritt's acquittal on the obstruction charge and the trial court's express finding that the issue of Merritt's flight had no bearing on the admissibility of the cocaine seized at the scene, Merritt cannot show that he was prejudiced by counsel's failure to highlight this discrepancy. See *Crenshaw v. State*, 248 Ga. App. 505, 510 (4) (546 SE2d 890) (2001) (counsel was not ineffective in failing to preserve a claim of error as to the trial court's denial of a motion to suppress drugs found by

15

drug dog who alerted on the exterior of defendant's car when that fact provided the court with grounds for denial of the motion).

(b) As to Merritt's assertion that counsel was ineffective in allowing his prior convictions for voluntary manslaughter and firearm possession into evidence, the record shows that in the course of a discussion outside the presence of the jury as to the admissibility of Merritt's prior drug convictions, the State and counsel showed that both sides were aware of Merritt's 1989 conviction for voluntary manslaughter in connection with a 1988 robbery. The State also represented that it would not seek to introduce a 1989 conviction for firearm possession as not probative as to the drug possession charge at issue. When defense counsel stated his position that admission of the voluntary manslaughter conviction would be more prejudicial than probative, the State noted that the copy of the conviction was incomplete in that it did not include the sentence imposed. Defense counsel then agreed to the admission of Merritt's prior drug convictions, but not the voluntary manslaughter or firearm convictions, for purposes of impeachment.

Immediately afterward, and against counsel's advice, Merritt decided to testify on his own behalf. Counsel began direct examination with the statement of his understanding that Merritt "had a little bit of criminal record in the past." Merritt

16

agreed, and counsel proceeded to examine him on the subject of his drug convictions so as to "lessen the blow" of the admission of these convictions in accordance with a strategy of presenting Merritt as a drug user but not a drug dealer. Although counsel conducted his direct examination of Merritt under the assumption that the parties and the trial court had agreed to admit only Merritt's prior drug convictions for purpose of impeachment, the State nonetheless prefaced its cross-examination with a motion, made outside the presence of the jury, to introduce any and all of Merritt's prior convictions, including the voluntary manslaughter conviction, because counsel had "opened the door" to the issue of his general character by stating that Merritt had only a "little bit" of a criminal record. When the trial court granted the State's motion, the State proceeded, over Merritt's objection, to cross-examine him as to his convictions for voluntary manslaughter and possession of a firearm by a convicted felon.

We note that although appellate counsel asserted at the hearing on Merritt's motion for new trial that the trial court had erred when it allowed the State to cross-examine Merritt as to the voluntary manslaughter and firearm convictions, Merritt has not asserted any such error on appeal. Instead, he has chosen to blame counsel for pursuing what the Supreme Court of Georgia has termed the "reasonable strategy, however mistaken it may appear with hindsight," of placing the "damaging

17

information" of Merritt's prior drug convictions before the jury through his direct testimony, "rather than risk having the information extracted from him on cross-examination." *Collier v. State*, 288 Ga. 756, 758 (3) (707 SE2d 102) (2011) (citation and punctuation omitted); see also *Marshall v. State*, 275 Ga. 740, 745 (10) (571 SE2d 761) (2002) (even where counsel's questions about whether his client had previously "owned a gun" led to the introduction of a prior conviction for stealing one, the questions "were the result of sound trial strategy"; "[w]hether, in hindsight, this tactical decision appears to have been wise or unwise is not determinative of whether it constituted the ineffective assistance of trial counsel") (footnotes omitted). As we have noted above, moreover, Merritt's acquittal on one of the two charges against him also supports the conclusion that counsel's performance was not deficient in this respect.

But even assuming that counsel performed deficiently when he characterized Merritt as having only a "little bit" of criminal history, thus opening the door to the admission of Merritt's voluntary manslaughter and firearm convictions, Merritt has not established that he suffered prejudice as a result. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having

18

produced a just result." *Strickland*, 466 U. S. at 686 (II). Here, the evidence against Merritt consisted of not only the accurate information Taylor provided to police of the most relevant circumstances at the controlled buy, including Merritt's appearance, his car, and the timing of his arrival, but also Merritt's own admissions at trial as to his drug use with Taylor, his decades-old drug habit, and his ownership of all of the items found on the floor at his arrest (except for the cocaine). In light of this overwhelming evidence, we cannot say that Merritt has shown a reasonable probability that had his voluntary manslaughter and firearm convictions not been introduced, the result of his trial would have been different. See *Massey v. State*, 306 Ga. App. 180, 184 (4) (a) (702 SE2d 34) (2010) (given overwhelming evidence of defendant's guilt, it was highly probable that counsel's failure to request an instruction confining consideration of prior convictions to purposes of impeachment did not contribute to the guilty verdict); *Moore v. State*, 242 Ga. App. 249, 250 (1) (a) (529 SE2d 381) (2000) (even where counsel was deficient in not objecting to admission of a copy of a prior armed robbery conviction, defendant convicted of armed robbery could not show prejudice in light of the overwhelming evidence of his guilt).

(c) As to Merritt's claim that counsel failed to prepare him adequately so as to avoid the topic of his longtime drug use, the record shows that counsel advised Merritt not to testify because "he was not going to be a good witness" and he "had a [much] better chance of winning the case" by attacking the credibility of Taylor and the police. The record also shows that counsel never asked Merritt whether he used drugs, but that Merritt volunteered that he had been using crack "for a long time," and that it was "his pleasure . . . to take and smoke a little bit of crack from time to time." Further, counsel testified that Merritt informed him of his decision to testify only moments before taking the stand, and that counsel advised Merritt at that time "to keep his answers short so that he didn't open the door to extraneous facts that could hurt him." In light of this evidence that Merritt ignored counsel's advice not only not to testify but also, once Merritt decided to testify, for Merritt to keep his answers limited to the topic asked, we cannot say that the trial court clearly erred when it concluded that counsel's performance was not deficient in this respect. See *Stevens v. State*, ___ Ga. App. ___ (b) (Case No. A14A1407) (762 SE2d 833) (2014) (defendant could not show that counsel's performance was deficient when counsel discouraged him from testifying and when defendant was "adamant" about doing so).

20

(d) Merritt claims that counsel failed to emphasize a discrepancy between testimony at the hearing on Merritt's motion to suppress that 3.5 grams of cocaine would have a street value of between $200 and $500 and the evidence that Taylor was willing to pay $300 for a little more than 1.59 grams.[2] Counsel explained at the hearing on Merritt's motion for new trial that he intentionally avoided any discussion of the amount and value of crack cocaine "because then it looks like we're sitting there talking about crack because my client indeed had some crack." Counsel's strategy was "not to get into a great debate . . . over the weights and prices of cocaine," but rather to "focus on the lack of credibility of the witnesses and the lack of evidence that the State was presenting."

There was no dispute that the cocaine found next to Merritt weighed 1.59 grams, and evidence as to the drug's street value had no bearing on the question whether Merritt was guilty of possessing cocaine in an amount sufficient to infer an intent to distribute. See OCGA § 16-13-30 (c) (differentiating penalties for possession of a controlled substance by weight, not street value). It follows that the trial court did not clearly err when it concluded that counsel's strategic decision not to discuss

---

[2] During its deliberations, the jury sent out a question as to the street value of a gram of cocaine.

21

discrepancies in the value of the crack cocaine at issue was a reasonable one. See *Barber*, 317 Ga. App. at 604 (2) (c).

(e) As to Merritt's claim that counsel failed to object to the introduction of his prior drug offenses in support of the imposition of a recidivist sentence, counsel testified that he had received and examined certified convictions for each of those introduced and that no viable objections could be made to any of them. He also noted that Merritt had been represented by counsel in each of the guilty pleas producing convictions, that he and Merritt discussed each of them, and that Merritt never raised any objections to any of the convictions. As we have held in Division 3 above, moreover, Merritt's 1988 conviction for possession of cocaine with intent to distribute as well as his 1986 conviction for possession of marijuana with intent to distribute were properly introduced in aggravation of punishment. Because any objections to the introduction of these convictions would have lacked merit, trial counsel was not ineffective for failing to make such objections. See *Phillips v. State*, ___ Ga. App. ___ (2) (a) (Case No. A14A1308, decided October 15, 2014) (defendant had not shown that counsel performed deficiently when he failed to object to introduction of prior convictions properly admitted for purposes of the recidivism statute).

22

For all these reasons, the trial court did not err when it denied Merritt's motion for new trial.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.