A99A1817. RANSOM v. THE STATE.
(521 SE2d 430)

ELDRIDGE, Judge.

Rico Ransom appeals from a DeKalb Superior Court's order denying his motion to suppress evidence obtained pursuant to an allegedly illegal detention and resulting chase arising from the following set of facts adduced at the motion hearing:

DeKalb County Police Officer B. Davis testified that he was patrolling in a marked police car by Cedar Park in Scottsdale, DeKalb County, at approximately 11:30 a.m. The area, and the park in particular, is a target for police patrols because it is a high drug crime area. Officer Davis "has made a lot of arrests out of that area for drug activity," including several arrests in Cedar Park itself. "Hundreds of complaints" by area residents are received by the DeKalb police department regarding prostitution and the sale of drugs in the area. Davis also had made several firearm arrests in the park.

On the day at issue, Davis saw appellant Rico Ransom and three other men standing around the park's basketball court, apparently

doing nothing. Davis pulled over and exited his patrol car. As he approached the men, Officer Davis saw Ransom and another man hide behind a large oak tree adjacent to the basketball court. When Davis reached the group, Ransom and the other man came out from behind the tree. Davis asked the men what they were doing. One man, Tyrone Flemister, replied, "playing basketball." Davis inquired about the absence of a ball. After several moments of consternation, Flemister stated that they were waiting for another person to arrive with a ball.

At that point, to Officer Davis, the totality of the circumstances provided a basis for a *Terry*-type[1] pat-down of Flemister based upon Flemister's presence at an active and known drug sale location for no other apparent purpose; what appeared to be furtive behavior on the part of two members of the group in hiding behind a tree upon the approach of a law enforcement officer; Flemister's apparent falsehood regarding a purpose for being at a known drug sale location; and personal experience that likened the current situation to others Davis had personally encountered in the past when making drug sale arrests.

As the officer began to pat down Flemister, two members of the group walked away. However, Rico Ransom, upon viewing the pat-down, "just took off; flat out ran." Prior to this point, no physical motion or spoken word had been directed toward Ransom. Officer Davis gave chase and ordered Ransom to stop. Ransom ignored the officer's command and kept running. During his flight, Ransom discarded on a nearby creek embankment what appeared to be a gun and ammunition magazine. Ransom then ran into the creek, where Davis saw him reach into his clothing and pull out a plastic bag and drop it into the creek. After a few more minutes, Davis and subsequent backup officers were able to detain Ransom in the creek. The plastic bag was recovered, and it contained 15 small ziplock bags of crack cocaine, totaling 22 grams in weight. A Glock 9mm handgun and ammunition magazine were recovered from the creek embankment. Ransom was then taken into custody. Thereafter, he told Davis that the gun was his, but the drugs were not.

Ransom and Tracy Ross, who had been part of the foursome at Cedar Park, testified at the motion to suppress hearing. They testified that the men had, in fact, been playing basketball when Officer Davis approached them; that Davis began harassing them for no apparent reason; that Ransom never ran from the group, but began to walk away from the park; that Officer Davis started to chase him for no apparent reason; and that Ransom ran only because of the

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

"fight or flight theory." In his testimony, Ransom did not deny or in any manner negate the fact that, during the chase, he discarded the gun and drugs found by Officer Davis.

Relying on our decision in *Hunt v. State*, 205 Ga. App. 490, 491 (422 SE2d 24) (1992), the trial court found that Ransom was in a state of flight when he abandoned the items sought to be suppressed and, thus, the seizure of the items was not the product of an illegal arrest. The trial court denied Ransom's motion to suppress. *Held*:

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court." (Citations and punctuation omitted.) *Scott v. State*, 232 Ga. App. 337, 338 (1) (501 SE2d 255) (1998).

1. In his first enumeration of error, Ransom contends that his motion to suppress should have been granted because Officer Davis did not have reasonable suspicion to stop, detain, or pat down any of the four men in the park.

(a) Davis' initial approach of the four men in the park did not constitute a "stop" of the men. A police officer may approach a citizen, ask for identification, and freely question a citizen with or without any basis or belief that the citizen is involved in criminal activity, as long as the officer does not detain the citizen or create the impression that the citizen may not leave. *State v. Kaylor*, 234 Ga. App. 495, 496-497 (507 SE2d 233) (1998).

(b) Ransom does not have standing to challenge the detention and pat down of Tyrone Flemister. *Stewart v. State*, 227 Ga. App. 659, 661, n. 1 (490 SE2d 194) (1997). "The Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted vicariously." (Citations and punctuation omitted.) *Delgado v. State*, 192 Ga. App. 356, 357 (384 SE2d 680) (1989); *Gilbert v. State*, 159 Ga. App. 326, 327 (283 SE2d 361) (1981).

(c) There is no evidence that Ransom or the other two members of the foursome were themselves "detained" by virtue of Flemister's detention and pat-down. The evidence is uncontroverted that Davis did not pat down any other member of the group, and there is no testimony from Davis that he intended to detain and pat down any other member of the group. In fact, according to the testimony of all parties, two members of the group started to walk away from the area when Davis began the pat-down; Davis did not prevent or attempt to prevent either man from leaving.[2] It was only because Ransom bolted and ran at the sight of the pat-down that a subse-

---

[2] "Contact between police and citizens implicates no Fourth Amendment interest, unless in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Citations and punctuation omitted.) *Pickens v. State*, 225 Ga. App. 792, 793 (484 SE2d 731) (1997).

quent foot chase ensued. We decline to accept Ransom's invitation to find that a detention and pat-down of one member of a group is the equivalent of a detention and pat-down of all members of a group, especially in the absence of any evidence of such intention.

2. Ransom contends that he "had the right to run away from the illegal encounter." By this, we assume Ransom is referring to the detention and pat-down of Flemister. Pretermitting the validity of such claim, we do not agree with Ransom's correlating contention that Officer Davis could not investigate Ransom's flight.

> Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search; certainly these circumstances [give] rise to an articulable suspicion that a criminal act may have been occurring so as to authorize a brief investigatory stop.

(Citation omitted.) *State v. Smalls*, 203 Ga. App. 283, 286 (2) (416 SE2d 531) (1992).

Here, Ransom's flight, coupled with his earlier, suspicious behavior in hiding behind a tree at the approach of law enforcement and his presence in a known drug sale location for no apparent purpose, provided Officer Davis with at least a reasonable suspicion of Ransom's criminal activity to warrant further investigation. *State v. Grimes*, 195 Ga. App. 773, 774 (1) (395 SE2d 42) (1990).[3] That such further investigation necessarily entailed a foot chase was due only to Ransom's refusal to halt at Officer Davis' authorized request.

3. Ransom contends that he was improperly "seized" at the point in which he entered the creek, and thus, the drugs he threw down during such seizure should have been suppressed pursuant to the "fruit of the poisonous tree" doctrine.[4] However, the trial court found as a matter of fact that Ransom was still in a state of flight when he discarded the drugs. The evidence supports such finding in that Officer Davis testified that, *after* Ransom had dropped the plastic bag of drugs, "he ran from that location — I was going down the bank towards him. He ran down the creek from me." The evidence shows that it took "a few minutes" to apprehend Ransom subsequent to his dropping of the drugs. "[A] trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and

---

[3] See also *Tuggle v. State*, 236 Ga. App. 847 (512 SE2d 650) (1999); *Castillo v. State*, 232 Ga. App. 354, 356-357 (502 SE2d 261) (1998); *Walker v. State*, 228 Ga. App. 509, 511 (1) (493 SE2d 193) (1997); *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891) (1989); *Scott v. State*, 193 Ga. App. 74 (387 SE2d 31) (1989); *State v. Billoups*, 191 Ga. App. 834 (383 SE2d 198) (1989).

[4] *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963).

punctuation omitted.) *Scott v. State*, supra at 338. Since it was supported by the evidence, we find no error in the trial court's determination that Ransom was still in a state of flight at the time he dropped the drugs. Accordingly, he could not have been improperly "seized" at such time; the "fruit of the poisonous tree" doctrine is not implicated; and Ransom's argument is meritless. *Milton v. State*, 232 Ga. App. 672, 677 (4) (503 SE2d 566) (1998).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 30, 1999.

*Jennifer A. Jones*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Gregory J. Lohmeier, Maria Murcier-Ashley, Assistant District Attorneys*, for appellee.