A08A1185. McCLARY v. THE STATE.
(663 SE2d 809)

BLACKBURN, Presiding Judge.

In this interlocutory appeal, Corey McClary challenges the trial court's denial of his motion to suppress evidence supporting an indictment for obstruction of an officer[1] (one felony and one misdemeanor count) and for attempted removal of a weapon from a peace officer.[2] Because the officer's attempt to briefly detain McClary was based on a particularized and objective basis, and because McClary fled despite the officer's order not to, we affirm.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's appli-

---

[1] OCGA § 16-10-24 (a), (b).
[2] OCGA § 16-10-33 (a).

cation of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*.[3] Here, the relevant facts are undisputed; therefore, we review the trial court's ruling de novo. See *State v. Underwood*.[4]

The undisputed record shows that at approximately 4:00 a.m., a uniformed state university police officer[5] in his marked cruiser patrolled an area he knew to have had vehicle break-ins in a nearby parking lot. The officer saw McClary walking alone on a street near an unlit cemetery which the officer knew to be used as a cut-through to access the parking lot. The officer stopped his cruiser and approached McClary on foot, first asking him for identification, which McClary did not have. The officer asked McClary where he was coming from and where he was going. McClary answered and further explained that he "got mad at [his] girl," so he was walking to another location. When the officer asked whether they had gotten into a fight, McClary replied, "no." The officer then asked where McClary lived, to which he replied "Joree Street," and the officer radioed to dispatch, requesting that they "[c]all down to the City and see if they have any 10-16's[6] on Joree Street, I'd say in the past hour."

At that point, McClary fled into some nearby woods. The officer ordered McClary to stop, pursued McClary into the woods, and eventually tackled him from behind. McClary then physically struggled with the officer, yanking at the officer's holstered handgun and grabbing the officer's privates. The officer was able to subdue McClary by striking him with a flashlight, while another officer arriving at the scene handcuffed McClary.

McClary was indicted for one count of obstruction for fleeing the officer, one count of obstruction for fighting the officer, and one count of attempted removal of a weapon from a peace officer. McClary moved to suppress the evidence of such crimes, arguing that the officer did not have authority to pursue and arrest McClary. After an

---

[3] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[4] *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008).

[5] McClary does not challenge the university police officer's official capacity to arrest him, but we nevertheless note that

[c]ampus policemen of the State university system have the power to make arrests for offenses committed upon any property under the jurisdiction of the board of regents and for offenses committed upon any public or private property within 500 yards of any property under the jurisdiction of the board.

*Hawkins v. State*, 281 Ga. App. 852, 853 (1) (637 SE2d 422) (2006).

[6] It is undisputed that the term "10-16" is the police radio code for a domestic violence report.

186

evidentiary hearing, the trial court denied the motion,[7] and this Court granted McClary's application for interlocutory appeal.

McClary contends that the trial court erred in allowing evidence of his resistance to the arrest because the officer allegedly had no basis for pursuing him into the woods and arresting him. In light of the circumstances of this case, we disagree.

> Under our law, there are three levels of police-citizen encounters. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. This tier provides no Fourth Amendment protection. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. The third tier of police-citizen encounters includes full-scale arrests that must be supported by probable cause.

(Citation and punctuation omitted.) *State v. Burks*.[8]

Here, the officer initially "approached [McClary] and asked for proof of identification, which [amounted to] first-tier conduct that does not raise Fourth Amendment concerns." *State v. Devine*.[9] During the ensuing conversation, McClary volunteered that he "got mad at [his] girl," and the officer then asked for McClary's address to determine whether any reports of domestic violence had been made. As soon as the officer provided McClary's address to the radio dispatcher, within earshot of McClary, McClary burst into headlong flight into the woods. Although the officer used the police code "10-16" to denote domestic dispute (which McClary would not necessarily understand), we find it significant that McClary, upon hearing his own street name being provided to the radio dispatch, fled the scene into the woods. At that point the officer ordered McClary to stop several times, which orders McClary did not heed.

We hold that, in light of the facts of this case, including that McClary said he was "mad at [his] girl" and the officer's radio call

---

[7] The trial court also denied McClary's motion for reconsideration after reviewing a newly discovered videotape of the events, which is part of the record on appeal.

[8] *State v. Burks*, 240 Ga. App. 425, 426 (1) (523 SE2d 648) (1999).

[9] *State v. Devine*, 276 Ga. App. 159, 160 (622 SE2d 854) (2005).

within earshot of McClary, McClary's immediate headlong "flight [was] a circumstance sufficient to give an articulable suspicion of illegal activity, justifying a brief investigatory stop." (Punctuation omitted.) *State v. Devine*, supra, 276 Ga. App. at 161. See *Lee v. State*;[10] *Sharp v. State*;[11] *State v. Burks*, supra, 240 Ga. App. at 427.

> The U. S. Supreme Court has held that unprovoked flight, given other suspicious circumstances, may give rise to reasonable suspicion: . . . [N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight — wherever it occurs — is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

*Crowley v. State.*[12]

Therefore, in light of the circumstances of this case, when McClary fled despite the officer's order to stop, the officer "was authorized to chase and briefly detain" McClary to complete the investigation into the suspected domestic dispute. *State v. Devine*, supra, 276 Ga. App. at 161. When McClary then violently fought the officer during the attempted detention, the officer had probable cause to arrest McClary for obstruction, and the trial court correctly denied McClary's request to suppress the evidence of his arrest.

We find the facts of this case to be distinct from *Black v. State*,[13] where the arresting officer did not order the suspect to stop and the officer lacked a particularized objective basis for initially attempting to physically detain the suspect, and from *State v. Dukes*,[14] where police executed a full-blown arrest for obstruction based solely on the defendant's flight. Here, by contrast, the officer had reason to briefly detain McClary to complete his investigation and was authorized to and did order McClary to stop. When McClary was ultimately apprehended, his physical combat with the officer justified the arrest

---

[10] *Lee v. State*, 270 Ga. 798, 803 (7) (514 SE2d 1) (1999).
[11] *Sharp v. State*, 275 Ga. App. 487, 488 (1) (621 SE2d 508) (2005).
[12] *Crowley v. State*, 267 Ga. App. 718, 720 (601 SE2d 154) (2004).
[13] *Black v. State*, 281 Ga. App. 40, 44 (1) (635 SE2d 568) (2006).
[14] *State v. Dukes*, 279 Ga. App. 247, 251 (630 SE2d 847) (2006).

for obstruction. Therefore, based on the facts of this case, the trial court was authorized to deny McClary's motion to suppress.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JUNE 24, 2008.

*James W. Hall, Jr.*, for appellant.
*J. David Miller, District Attorney, James B. Threlkeld, Assistant District Attorney*, for appellee.