**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 15, 2015**

# In the Court of Appeals of Georgia

A15A1237. THE STATE v. QUARTERMAN.

BARNES, Presiding Judge.

The State appeals the trial court's order granting Garnelle Quarterman's motion to suppress evidence obtained following a traffic stop of a vehicle in which Quarterman was a passenger.[1] The State contends that the trial court erred by concluding that (1) the police officer's initial encounter with Quarterman was not a second-tier encounter supported by reasonable articulable suspicion and (2) a third-tier encounter occurred when the officer grabbed Quarterman, at which point the officer lacked probable cause to make an arrest. For the reasons that follow, we reverse.

When reviewing a trial court's ruling on a motion to suppress, we apply the following principles:

---

[1] In its notice of appeal, the State indicates that it is appealing pursuant to OCGA § 5-7-1 (a) (3), but because this appeal is from an order suppressing or excluding evidence illegally seized, it falls under OCGA § 5-7-1 (a) (4).

When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citations, punctuation, and footnotes omitted.) *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). But "[w]e owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." Id. at 750 (2).

The evidence presented at the motion to suppress hearing, construed in favor of the trial court's factual findings, showed that on February 1, 2014, Quarterman was a passenger in a vehicle that an officer attempted to stop for speeding. When the vehicle failed to stop, two additional officers responded to assist. The vehicle continued to flee and the officers chased it until the pursuing officer performed a "pit maneuver," forcing the vehicle to stop. The driver and the two passengers then

2

immediately exited the vehicle and ran away. The pursuing officer told all three men to stop, but they continued to run from the officers. The officer pursued the front seat passenger, who was identified as Quarterman.

When asked about his reasoning for chasing Quarterman, the officer stated that he "felt there was reasonable suspicion to believe that he was involved in criminal activity in that vehicle that was fleeing from us." Defense counsel inquired further:

[COUNSEL]: What criminal activity would he have been responsible for at that time? What suspicion [did] you have?

[OFFICER]: No one runs for no reason.

[COUNSEL]: So merely the fact that he ran.

[OFFICER]: That's why I was chasing him. Yes, sir.

[COUNSEL]: Is there a law that makes it a crime to run from the police?

[OFFICER]: If there's suspicion, obstruction.

[COUNSEL]: Well, what was the suspicion for?

[OFFICER]: He was involved in a vehicle crash, and he left the scene also.

3

. . .

[COUNSEL]: And what legal responsibility did he have to stay at that vehicle? Define which legal requirement he had to stay at the vehicle.

[OFFICER]: I'd have to look it up.

[COUNSEL]: So you don't know.

[OFFICER]: That's right.

[COUNSEL]: That's right. You don't know.

[OFFICER]: You can say that.

[COUNSEL]: And so, without knowing Mr. Quarterman, his identity, or any suspicion of criminal activity, you decided to pursue and detain Mr. Quarterman. Correct?

[OFFICER]: I chased him. Yes, sir.

The pursuing officer was able to catch Quarterman after chasing him for about 200 yards, at which point he "grabbed him by the arm to take him to the ground." According to the officer, Quarterman then turned around, struck him in the face, and began fighting him. While they were exchanging blows, Quarterman allegedly

4

threatened to kill the officer and attempted to remove the officer's weapon from its holster. After one of the other officers arrived to assist, they were able to restrain Quarterman and place him under arrest. During a search of Quarterman incident to his arrest, they discovered a gun and cocaine.

Quarterman was indicted for two counts of fleeing or attempting to elude a police officer, criminal attempt to commit murder, three counts of aggravated assault on a police officer, two counts of attempted removal of a weapon from a public official, three counts of obstruction of an officer, criminal attempt to commit a felony, possession of cocaine, two counts of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following indictment, Quarterman filed a motion seeking to suppress all evidence obtained as a result of the allegedly unlawful seizure.[2] The trial court granted the motion and excluded all evidence "obtained by [the officer] through an unlawful seizure of [Quarterman]'s person."

---

[2] Although Quarterman's motion was styled as a "Motion to Dismiss," the relief sought in the motion was the suppression of evidence obtained as a result of the allegedly illegal seizure, the parties proceeded as if the motion was a motion to suppress, and the trial court treated the motion as a motion to suppress. See *State v. Johnston*, 249 Ga. 413, 414 (291 SE2d 543) (1982) (trial court is not bound by nomenclature used by a party). Accordingly, we treat Quarterman's motion as a motion to suppress.

Pursuant to the Fourth Amendment to the United States Constitution, people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that right shall not be violated. In construing this amendment, the United States Supreme Court has set forth three tiers of encounters between police and citizens: "(1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." (Citation omitted.) *State v. Dukes*, 279 Ga. App. 247, 248 (630 SE2d 847) (2006).

> In the first [tier], police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. This tier provides no Fourth Amendment protection. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. The third tier of police-citizen encounters includes full-scale arrests that must be supported by probable cause.

(Citations and punctuation omitted.) *McClary v. State*, 292 Ga. App. 184, 186 (663 SE2d 809) (2008).

The trial court ruled that the officer's initial interaction with Quarterman was a first-tier encounter, from which Quarterman had the right to leave. We acknowledge that "a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter[, and that] even running from police during a first-tier encounter is wholly permissible." (Citations and punctuation omitted.) *Ewumi v. State*, 315 Ga. App. 656, 658 (1) (727 SE2d 257) (2012). In this situation, however, the officer was not precluded from investigating Quarterman's flight.

> Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search; certainly these circumstances give rise to an articulable suspicion that a criminal act may have been occurring so as to authorize a brief investigatory stop.

(Citation and punctuation omitted.) *Ransom v. State*, 239 Ga. App. 501, 504 (2) (521 SE2d 430) (1999). Quarterman was a passenger in a vehicle involved in a high-speed chase that ended only when a pursing officer performed a "pit maneuver" on the vehicle to make it stop. As soon as the vehicle came to a stop, Quarterman immediately exited and ran away from the officers. Quarterman's flight, coupled with the circumstances of the stop, provided the officer with at least a reasonable

7

articulable suspicion to warrant further investigation. See id.; see also *McClary*, 292

Ga. App. at 187 (suspicious answer during first-tier encounter followed by immediate

headlong flight was sufficient to justify brief investigatory stop). "That such further

investigation necessarily entailed a foot chase was due only to [Quarterman]'s refusal

to halt at [the officer's] authorized request." *Ransom*, 239 Ga. App. at 504.

When the officer caught Quarterman, he grabbed him by the arm to take him

to the ground. The trial court ruled that this contact escalated the interaction to a

third-tier encounter, a custodial arrest, that required probable cause. We disagree.

> The test for determining whether a person has been placed under
> custodial arrest is whether the individual was formally arrested or
> restrained to a degree associated with a formal arrest, not whether the
> police had probable cause to arrest. The test is whether a reasonable
> person in the suspect's position would have thought the detention would
> not be temporary. A trial court deciding whether to admit evidence must
> apply this objective test; it is the reasonable belief of an ordinary person
> under such circumstances, and not the subjective belief or intent of the
> officer, that determines whether an arrest has been effected.

(Citations and punctuation omitted.) *Suluki v. State*, 302 Ga. App. 735, 738 (1) (691

SE2d 626) (2010). Here, the officer's act of grabbing Quarterman's arm was a

second-tier encounter, an attempted brief detention to investigate the suspicion of

8

illegal activity. See *McClary*, 292 Ga. App. at 187. When Quarterman violently fought the officer during the attempted detention, he escalated the encounter to a third-tier encounter and gave the officer probable cause to arrest him for obstruction. See id. Accordingly, the trial court erred by granting Quarterman's request to suppress the evidence discovered as a result of his arrest.

*Judgment reversed. McMillian, J., concurs. Ray, J. concurs in the judgment.*