**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 9, 2016**

# In the Court of Appeals of Georgia

A15A1836. SIMS v. THE STATE.

ANDREWS, Presiding Judge.

Benjamin Sims appeals from the trial court's denial of his pre-trial motion to suppress evidence supporting the State's accusation charging him with misdemeanor possession of marijuana and misdemeanor obstruction of law enforcement officers.[1] For the following reasons, we affirm the denial of the motion.

Sims claims that, in violation of the Fourth Amendment to the United States Constitution, police officers: (a) illegally stopped and detained him for questioning without reasonable suspicion of criminal activity; (b) illegally arrested him for obstruction when he walked away from and resisted the unlawful detention; and (c) found marijuana on his person during an illegal search incident to the unlawful arrest.

---

[1] We granted Sims's application for an interlocutory appeal.

In its order denying the motion to suppress, the trial court found that the officers lawfully attempted to detain Sims for questioning based on reasonable suspicion, and lawfully arrested him for obstruction when he resisted the detention. The sworn evidence at the motion hearing supports the trial court's order.

The State introduced the following testimony at the hearing on the motion: Officer Cook, who was employed as a police officer with the Athens-Clarke County Police Department, testified that he also worked off-duty providing security for the University Oaks Apartments. The Apartments were located in a high crime area plagued by burglaries, robberies, and illegal drug sales, and the Apartments hired Cook and other police officers to provide off-duty security against these criminal activities. The off-duty officers worked for the Apartments in full police uniform and used their police patrol vehicles. The Apartments specifically asked the off-duty officers to look for non-residents on the Apartments property engaging in criminal activity. Officer Cook first encountered Sims on the Apartments property a few days prior to the present incident. While providing off-duty security, Cook investigated the smell of burning marijuana coming from one of the apartments. After the apartment resident admitted that marijuana was being smoked inside the apartment, Cook elected not to make arrests, but warned the resident and the other individuals in the

2

apartment (including Sims who did not live there) that smoking marijuana was an illegal activity not allowed on the property. A few days later, while Cook was again providing off-duty security for the Apartments property, he repeatedly saw Sims and another person he did not recognize coming out from behind different buildings on the Apartments property over a period of time. At that point Officer Cook knew that Sims was not a resident of the Apartments; could not confirm that the other person was a resident; knew that Sims had recently been using marijuana on the property; knew of the problem with non-residents coming on the property to engage in criminal activity; and knew of recent burglaries and recent narcotics sales on the property. Given these facts, along with the unusual movement by Sims and the other person from behind building to building on the property, Cook suspected that Sims and the other person may be non-residents engaged in criminal activity on the property. To investigate this suspicion, Cook drove up to Sims and the other person in his patrol vehicle. Without exiting the vehicle, Cook rolled down the window, said to Sims, "I know you're not a resident," and asked the other person, "[D]o you live here, sir?" In response to this question, Sims told the other person not to answer, cursed at the officer, and both men walked away. Cook parked his patrol car, got out, followed behind the two men as they walked away, identified himself as a police officer hired

by the Apartments, and attempted to stop the men . But the men refused to stop, continued to curse at the officer, and continued to walk away. At that point, Officer Cook called for backup, and a second police officer arrived, Officer Herring, who was patrolling on-duty in the area. When Herring arrived, he saw the two men walking away from Cook. Cook explained his suspicion to Herring and asked Herring to "see if you can talk some sense into them." Herring walked ahead of the two men and tried to get them to stop and answer questions about what they were doing at the Apartments property, but neither man would stop or answer questions. The men continued to walk away and act in a belligerent fashion toward the officers. Officer Herring eventually said he "pretty much had enough," reached for his handcuffs, and moved toward Sims. Sims said "You're not going to put those on me," and either ran or walked away at a fast pace to avoid the officer. At that point, Officer Herring caught and handcuffed Sims, who continued to physically resist the officers.

Sims claims that he lawfully exercised his right as a citizen to simply walk away from the officers because they had no basis under the Fourth Amendment to

stop and question him to investigate any suspicion of criminal activity, and no basis

to arrest him when he refused to stop and answer their questions.[2]

> [E]ncounters between police officers and citizens come in three varieties, at least as far as the Fourth Amendment is concerned: [tier one] encounters involving no coercion or detention, which are outside the purview of the Fourth Amendment altogether; [tier two] brief seizures, which require an officer to have a reasonable suspicion of criminal wrongdoing; and [tier three] custodial arrests, which require probable cause.

*Culpepper v. State*, 312 Ga. App. 115, 118 (717 SE2d 698) (2011) (Citation and

punctuation omitted). In a tier one encounter involving no coercion or detention,

"police officers may approach citizens, ask for identification, and freely question the

citizen without any basis or belief that the citizen is involved in criminal activity, as

long as the officers do not detain the citizen or create the impression that the citizen

may not leave." Id. (Citation and punctuation omitted). The touchstone of this kind

of encounter is the right of the citizen not to answer the officer's questions and to

walk or even run away. *Ewumi v. State*, 315 Ga. App. 656, 658 (727 SE2d 257)

---

[2] Even though Officer Cook was providing off-duty security for the Apartments during the events at issue, he was still at all times acting in the discharge of his official duties as a police officer. "[A]ll law enforcement officers have the general duty to enforce the law and maintain the peace. They carry this duty twenty-four hours a day, on and off duty." *Stryker v. State*, 297 Ga. App. 493, 494 (677 SE2d 680) (2009) (Citation and punctuation omitted).

(2012). We agree with the trial court that the facts show this was not a tier one police–citizen encounter, and that Sims was not entitled to resist and walk away. Rather, this was an attempted tier two encounter in which the police officers tried to stop and detain Sims based on reasonable suspicion of criminal wrongdoing.

> The Fourth Amendment allows a police officer to stop persons . . . to investigate the officer's reasonable suspicion "that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U. S. 411, 417 (101 SC[ t] 90, 66 LE2d 621) (1981); *Terry v. Ohio*, 392 U. S. 1, 9 (88 SC[t] 1868, 20 LE2d 889) (1968); *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994). To establish the necessary reasonable suspicion to make an investigative stop, the totality of the circumstances must show that the officer had "specific and articulable facts which, taken together with rational inferences from those facts, . . . [provided] a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Punctuation omitted.) *Vansant*, supra at 320. Although an investigative stop cannot be based on an officer's mere hunch that criminal activity is afoot, "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." (Citations and punctuation omitted.) *United States v. Arvizu*, 534 U. S. 266, 273 (122 SC[t] 744, 151 LE2d 740) (2002). In considering the totality of the circumstances in each case, a court must avoid evaluating the facts in isolation. Even where each in a series of acts may be susceptible to an innocent explanation, taken together they may collectively amount to reasonable suspicion justifying an officer's investigative stop. Id. at 274-275. Moreover, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." Id. at 277.

*Rolfe v. State*, 278 Ga. App. 605, 606-607 (630 SE2d 438) (2006).

6

Applying these standards, we find under the totality of the circumstances that Officers Cook and Herring had a reasonable suspicion that Sims was, or was about to be, engaged in criminal activity on the Apartments property. Officer Cook saw Sims, who he knew was not a resident, and another person he could not identify as a resident, moving about in unusual ways behind various buildings on the Apartments property. Although it was certainly possible that the two men were engaged in innocent conduct, the officer also knew of Sims's recent involvement with marijuana on the Apartments property, knew of continuing problems with non-residents engaged in criminal activity on the property, and knew of recent burglaries and illegal drug sales on the property. All of this knowledge, along with the officer's observations, supported reasonable inferences that led him to suspect that Sims and the person with him were engaged in criminal activity on the property. Moreover, when Cook approached Sims and the other person and attempted to determine if the other person was a resident of the Apartments property, Sims told the other person not to answer the officer. This conduct was additional suspicious behavior. Taken together, the circumstances were sufficient to give the officers a particularized and objective basis for reasonable suspicion to stop Sims and the other person to investigate.

Accordingly, the facts show that Officers Cook and Herring had lawful authority under the Fourth Amendment to detain and question Sims in a tier two encounter, and that the officers attempted repeatedly to exercise that authority. Because the facts show that Sims refused to submit to the assertion of that authority, Sims was not seized in a tier two encounter. *State v. Walker*, 295 Ga. 888, 890-895 (764 SE2d 804) (2014). Rather, Sims's continued resistance to the officers' lawful authority to conduct a tier two encounter provided the officers with probable cause to arrest Sims for obstruction. *McClary v. State*, 292 Ga. App. 184, 187 (663 SE2d 809) (2008); *Spence v. State*, 295 Ga. App. 583, 586 (672 SE2d 538) (2009); *State v. Quarterman*, 333 Ga. App. 803 (777 SE2d 489) (2015). It follows that the trial court did not err in denying Sims's motion to suppress.

*Judgment affirmed. Miller, P. J., and Branch, J., concur*.