**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 9, 2016**

# In the Court of Appeals of Georgia

A15A1858. THE STATE v. WILLIAMS.

BRANCH, Judge.

The State appeals the trial court's decision granting Michael Lloyd Williams's motion to suppress the admission of a statement he provided after his arrest for obstruction. For the reasons that follow, we reverse.

At the hearing on the admissibility of Williams's statements, Deputy Wesley Aaron, the only witness at the hearing, testified that on March 9, 2014, he was dispatched to investigate a forced entry and burglary of a metal shop owned by Angie and Travis Wilkerson. Aaron spoke to Travis Wilkerson and learned that several items had been taken from the shop, including "chains and chain bucks." Wilkerson told Aaron that a person had told him that Williams had some chains and bucks that supposedly had been stolen from Wilkerson at a property not far from Wilkerson's

shop. On cross examination, Aaron was asked, "So basically, Mr. Wilkerson heard some gossip or some talk that Mr. Williams might have information about this case, and you went out there to talk to him about it?" Aaron replied, "Not exactly at that time. I talked to the source that he got his information from before –" At that point, defense counsel interrupted Aaron and moved on to another point. On redirect examination, the State did not ask any follow-up questions about the source of the information.

Aaron proceeded to Williams's mother's residence to look for Williams, whom Aaron knew. There, Aaron told Williams that Williams was a suspect in the burglary. Aaron admitted that Williams was not in custody or under arrest. Aaron testified that as he asked questions, Williams became "very agitated and fidgety," and as the conversation continued, Williams suddenly "took off running." When Williams fled, Aaron demanded that Williams stop, which he did not, and Aaron then tased Williams and arrested him for misdemeanor obstruction of an officer for hindering the investigation. Aaron explained to Williams his rights under *Miranda* and transported Williams back to the sheriff's office. There, Aaron reread the *Miranda* warnings, and Williams agreed to make a statement, which is the subject of his motion to suppress.

Following the hearing on Williams's motion, the trial court issued an order stating

that after considering the facts and the law, the court found that Williams

> fled a first-tier encounter,[1] something [ ] the Defendant was permitted
> to do under Georgia law, thus his subsequent arrest for obstruction was
> illegal and without probable [cause,] thereby making any statement
> made after his arrest inadmissible.

The State appeals.

Generally, on review of a ruling on a motion to suppress the trial judge's

findings of fact should not be disturbed if there is any evidence to support them;

determinations of fact and credibility must be accepted unless clearly erroneous; and

the evidence must be construed in favor of the trial court's findings and judgment.

*Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Jackson v. State*, 258 Ga.

App. 806, 807-808 (2) (575 SE2d 713) (2002). And "[i]n all cases, [appellate courts]

independently apply the law to the facts." *Drake v. State*, 296 Ga. 286, 288 (2) (766

SE2d 447) (2014) (citations omitted). Here, the trial court did not make any factual

---

[1] "The United States Supreme Court has sculpted out three tiers of encounters between the police and citizens: (1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." *State v. Dukes*, 279 Ga. App. 247, 248-249 (630 SE2d 847) (2006) (footnote omitted).

findings; its rulings were either mixed questions of law and fact or questions of law.[2]

Without any specific factual findings, we construe the evidence in the light most favorable to uphold the trial court's findings and judgment, and determine the necessary factual findings "from reading the entire order," "by looking at how the trial court ultimately ruled." *Tate*, 264 Ga. at 56 (3); see also *Barnett v. State*, 204 Ga. App. 491, 492 (1) (420 SE2d 43) (1992) ("The trial court perforce of its ruling on the suppression motion found [certain] testimony credible.") (citation omitted). See generally *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (setting out rules for review of suppression rulings).

1. The trial court's ruling that Williams fled a first-tier encounter means that the trial court made one or both of two findings: either Aaron did not have enough information to make a second-tier stop,[3] Aaron did not seize Williams so as to effect

---

[2] The categorization of a police-citizen encounter into one of the three tiers established by case law interpreting the Fourth and Fourteenth Amendments is a mixed question of law and fact. *State v. Fisher*, 293 Ga. App. 228, 230 (666 SE2d 594) (2008); *Parker v. State*, 326 Ga. App. 175, 178 (2) (754 SE2d 409) (2014). "The existence of probable cause is a legal question as to which the appellate courts owe no deference to trial judges." *Hughes v. State*, 296 Ga. 744, 752 (2) (770 SE2d 636) (2015).

[3] See *Stafford v. State*, 284 Ga. 773, 774 (671 SE2d 484) (2008) (a second-tier stop requires reasonable, articulable suspicion that a crime may have been committed).

a second-tier stop,[4] or both. Construed in favor of the trial court's decision, we conclude that the trial court necessarily made both of these findings, and we conclude that both findings are supported by the record.

As for the first finding, the State failed to elicit testimony from Aaron to show that the source of the information implicating Williams was a concerned citizen as opposed to one or more anonymous witnesses; at best, the tip came from an informant of unknown reliability. See *Dukes*, 279 Ga. App. at 250. "Although a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect, reliability may be established if the details are corroborated by the observations of the police." *Brown v. State*, 223 Ga. App. 364,

---

[4] "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U. S. 249, 254 (II) (A) (127 SCt 2400, 168 LE2d 132) (2007) (citations and punctuation omitted). "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." Id. (citations omitted). Thus, a person has not been seized where an officer has approached an individual and asked a few questions. *Florida v. Bostick*, 501 U. S. 429, 434 (II) (111 SCt 2382, 115 LE2d 389) (1991); see also *State v. Walker*, 295 Ga. 888, 891 (764 SE2d 804) (2014) (no seizure where instead of submitting to the officer's direction to remove his hands from his pockets, defendant fled).

5

366 (1) (477 SE2d 623) (1996) (citation and punctuation omitted). Here, however, the tip did not contain any detail that would provide a basis for predicting Williams's future activity, and therefore the tip was not sufficient to create a reasonable articulable suspicion of criminal activity. Id. Accordingly, the testimony supports the conclusion that Aaron did not have enough information to make a second-tier stop.

As for the second finding, the evidence shows that Aaron did not place Williams in custody or under arrest at the time that Williams fled. Although Aaron told Williams that he was a suspect in the robbery, the trial court was authorized to find that prior to Williams's flight, the State failed to carry its burden of showing that Aaron made a show of authority sufficient to seize Williams or that Williams had submitted to Aaron's authority. See *Chamblee v. State*, 317 Ga. App. 673, 675 (732 SE2d 327) (2012) (there being no evidence that the officer engaged a siren, drew a firearm, or made any other show of force; used language or a tone of voice reflecting that compliance was compelled; or threatened, coerced, or physically restrained the defendant; and where officer admitted that defendant was not under arrest and was free to leave, "the evidence authorized the trial court to conclude that the officer's approach of and initial inquiries to [defendant] amounted to a first-tier encounter")

6

(footnote omitted); *Dukes*, 279 Ga. App. at 249. Accordingly, the trial court did not err by concluding that Williams fled a first-tier encounter with Aaron.

2. Nevertheless, "[f]light in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search," *State v. Smalls*, 203 Ga. App. 283, 286 (2) (416 SE2d 531) (1992), and also sufficient to give rise to articulable suspicion that the person fleeing has been engaged in a criminal act sufficient to perform a brief investigatory stop. *Ransom v. State*, 239 Ga. App. 501, 504 (2) (521 SE2d 430) (1999); see also *Illinois v. Wardlow*, 528 U. S. 119, 124 (120 SCt 673, 145 LE2d 570) (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *Barber v. State*, 317 Ga. App. 600, 602 (1) (b) (732 SE2d 125) (2012). Although the suspect's actions could be "ambiguous and susceptible of an innocent explanation," officers are authorized to "detain the individuals to resolve the ambiguity." *Wardlaw*, 528 U. S. at 125 (citation omitted).

Here, "other circumstances" than flight exist. Aaron had just told Williams about the stolen chains and stated that Williams was a suspect when Williams took off in headlong flight. Aaron was therefore authorized to briefly detain Williams for an investigative stop. See *McClary v. State*, 292 Ga. App. 184, 187 (663 SE2d 809)

7

(2008) (when officer questioned defendant in an area known for vehicle break-ins and radioed dispatch to confirm the defendant's answer at which point, the defendant burst into headlong flight, officer had articulable suspicion to order defendant to halt for a brief investigatory stop); *Ransom*, 239 Ga. App. at 504 (2) (flight, coupled with earlier, suspicious behavior in a known drug sale location when approached by law enforcement provided officer with reasonable suspicion of criminal activity). As Williams admits, Aaron then ordered Williams to halt, thereby attempting to perform a second tier stop, but Williams continued to flee thereby obstructing Aaron's proper request.[5] Compare *Dukes*, 279 Ga. App. at 250-251 (even if officer had reasonable suspicion of criminal activity based on defendant's flight, officer did not perform a second-tier stop but instead arrested defendant, for which officer did not have probable cause). Because Williams failed to stop in response to Aaron's order, Aaron then had probable cause to arrest Williams for obstruction. Thus the trial court's conclusion that Aaron lacked probable cause to arrest Williams was erroneous as a matter of law and must be reversed.

*Judgment reversed. Andrews, P. J., concurs. Miller, P. J., concurs in judgment only*.

---

[5] "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." OCGA § 16-10-24 (a).